UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BOARD OF TRUSTEES of the AGMA HEALTH FUND,<br><br>     Plaintiff,<br>  v.<br><br>AETNA LIFE INSURANCE COMPANY,<br><br>     Defendant. | **COMPLAINT**<br><br>1:24-cv-5168 |

Plaintiff Board of Trustees of the AGMA Health Fund, by and through its undersigned

attorneys, Blitman & King LLP, as and for its Complaint, alleges as follows:

## NATURE OF DISPUTE

1.  This is an action for breach of fiduciary duty pursuant to Sections 502(a)(2) and

502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.

§§ 1132(a)(2), 1132(a)(3).

## PARTIES

2.  Plaintiff Board of Trustees of the AGMA Health Fund ("Plaintiff," "Trustees," or

"Board of Trustees") administers the AGMA Health Fund ("Fund"), a multi-employer "employee

benefit plan" within the meaning of Sections 3(3) and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(3),

1132(d)(1), that provides self-funded hospital, medical, and prescription drug benefits, among

other benefits.

3.  The Fund was established by and operates pursuant to an Agreement and

Declaration of Trust ("Trust Agreement"), a true and correct copy of which is attached hereto as

Exhibit "A."

4.      The Board of Trustees is empowered by the Trust Agreement to act on behalf of the Fund and the Trustees are "fiduciaries" of the Fund as defined by Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

5.      The principal place where the Fund is administered is 305 7th Ave., Suite 2B, New York, NY 10001.

6.      Through a plan of benefits adopted by Plaintiff, the Fund provides health and welfare benefits to employees covered by collective bargaining agreements or other agreements requiring employers to contribute to the Fund on behalf of such employees.

7.      Defendant Aetna Life Insurance Company ("Defendant" or "Aetna") is a company incorporated under the laws of the State of Connecticut and whose principal place of business is in Hartford, Connecticut.

8.      Upon information and belief, Aetna is a wholly-owned subsidiary of Aetna, Inc. that designs, markets, sells, supplies, issues, underwrites, and administers health coverage products, including fully-insured and self-funded health benefit plans.  Aetna operates its business throughout the United States, including in New York.

**JURISDICTION AND VENUE**

9.      Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 and Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1).

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the acts complained of occurred in the Southern District of New York, where Plaintiff resides.

2

11.     Venue is also proper in this District pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), because it is the judicial district in which the Fund is administered.

**FACTUAL ALLEGATIONS**

A.     Defendant Aetna's Role as Claims Administrator and Fiduciary of the Fund

12.     The Fund provides health care benefits to its participants and their eligible dependents pursuant to a written plan of benefits consisting of a summary plan description, summaries of material modifications, and a medical plan booklet, each as amended from time to time ("Plan" or "Plan Document").  A true and correct copy of the medical plan booklet in effect during all periods relevant to this action is attached hereto as "Exhibit B."

13.     Under the Trust Agreement, Plaintiff has the authority to engage third parties to administer the Fund and act as fiduciaries as Plaintiff deems necessary and appropriate for the prudent and appropriate operation and administration of the plan and the protection of trust assets. (Ex. A at 35.)

14.     By agreement effective January 1, 2021, Plaintiff engaged Defendant Aetna and Aetna agreed to provide certain third-party administrative services for the Fund, including, but not limited to, handling and processing claims, making benefit determinations, paying claims, recordkeeping, issuing benefit determination notifications, and managing, controlling, and disposing of Fund's plan assets.

15.     The terms of that engagement are set forth in a contract titled "Master Services Agreement" ("Agreement") between the Fund and Aetna.  A true and correct copy of the Agreement is attached hereto as "Exhibit C."  The Agreement was in effect during all periods relevant to this action.

3

16.     Consistent with the Agreement, Aetna had the authority to and did in fact interpret the terms of the Plan (as an authorized designee of Plaintiff), determine benefit claims, and pay benefit claims with the Fund's plan assets, including through a banking facility offered by Aetna through which payments for Fund benefits, Service Fees charged by Aetna, and Fund benefit related charges were made.  Aetna thus exercised discretionary authority and responsibility for the administration of the Plan.

17.     Under the Agreement, Aetna was authorized to approve benefit claims and withdraw the Fund's plan assets to pay such claims by means of an Automated Clearing House ("ACH") transaction, with no advance notice to the Fund, directly from a banking facility and account so designated for such purposes.  Accordingly, Aetna exercised discretionary authority and control over the Fund's plan assets.

18.     The Trustees and Aetna further agreed that certain fiduciary duties were delegated to Aetna through the Agreement's implied and express delegation to Aetna of discretionary authority to determine entitlements to benefits under the Plan for claims received, including discretionary authority to determine and evaluate facts and evidence, and discretionary authority to construe the terms of the Plan.  (*See, e.g.*, Ex. C at 13.)

19.     With respect to the claim-related fiduciary duties delegated to Aetna pursuant to the Agreement, Defendant expressly incorporated the standard set forth in ERISA Section 404(a)(1)(B) and agreed to "observe the standard of care and diligence required of a fiduciary under ERISA Section 404(a)(1)(B)."  (Ex. C at 1, 2.)

20.     Under the Agreement, Aetna is obligated to "process claims for Plan benefits . . . in a manner consistent with the terms of the Plan . . . ."  (Ex. C at 13.)  The Plan, in turn, requires

Aetna to pay medical claims "within 30 days from when [Aetna] receive[s] all the information necessary." (Ex. B at 49.)

21.    Aetna meets the minimal standards established by ERISA to be considered a fiduciary of the Fund, as either a named fiduciary under the Agreement or a functional fiduciary pursuant to 29 U.S.C. § 1002(21)(A).

22.    At all relevant times, Aetna functioned as the Fund's fiduciary in processing claims, making benefit determinations, paying claims, recordkeeping, issuing benefit determination notifications, and managing, controlling, and disposing of the Fund's plan assets.

23.    At all relevant times, Aetna had fiduciary and statutory duties to the Fund to discharge its impliedly and expressly delegated fiduciary duties in accordance with ERISA, its promulgating regulations, and the documents and instruments governing the Fund, including but not limited to the Plan, the Agreement, and all schedules and amendments thereto.

B.    The Fund Obtains "Stop Loss" Insurance to Protect Plan Assets

24.    Effective January 1, 2021, the Fund purchased an Excess Stop Loss Insurance Policy ("Stop Loss Policy") through HCC Life Insurance Company ("HCC") to protect plan assets. The terms of the Stop Loss Policy provided that HCC would reimburse the Fund for its expenditure of plan assets on medical claims in excess of $215,000 for a single Fund participant during 2021, provided that Aetna—which was responsible for timely processing and paying medical claims on the Fund's behalf—paid the claims no later than March 31, 2022.

25.    As the Fund's third-party administrator, Aetna was aware of the existence and terms of the Stop Loss Policy in 2021, including the policy terms providing that the Fund would

be reimbursed for large medical claims incurred during 2021 as long as Aetna paid them by March 31, 2022.

26.    Effective January 1, 2022, the Trustees renewed the Fund's Stop Loss Policy through HCC on similar terms, i.e., HCC would reimburse the Fund for its expenditure of plan assets on medical claims in excess of $215,000 for a single Fund participant during 2022, provided that Aetna—which was responsible for timely processing and paying medical claims on the Fund's behalf—paid the claims no later than March 31, 2023.

27.    As the Fund's third-party administrator, Aetna was aware of the existence and terms of the Stop Loss Policy in 2022, including terms providing that the Fund would only be reimbursed for large medical claims incurred during 2022 if Aetna paid them by March 31, 2023.

28.    On April 27, 2022, the Fund's insurance broker, Hilb Group, LLC, emailed a copy of the Stop Loss Policy for 2022—which expressly contained the March 31, 2023 claims-paid deadline—to Aetna employee Erin Osmun, Account Manager for the Fund.

29.    On July 11, 2022, the Fund's insurance broker emailed a copy of the Stop Loss Policy for 2022 again to Erin Osmun, and also to Carolyn Ernau and Kimberly O'Key, Aetna client service managers responsible for the Fund.

30.    Accordingly, Aetna had actual knowledge of the terms of the Stop Loss Policy, including the requirement that it was required to pay eligible 2022 claims before March 31, 2023, in order for the Fund to be reimbursed for the expenditure of plan assets in excess of $215,000 for an individual participant.

6

C.     Defendant Aetna's Failure to Timely Pay Stop-Loss Eligible Claims By March 31, 2023 Results in Losses to the Plan of Approximately $1.8 Million

31.     On or about April 3, 2022, an individual covered by the Plan ("Participant") sustained serious injuries as a result of a motor vehicle accident.  Those injuries required hospitalization and acute medical care resulting in large medical claims.

32.     Upon information and belief, on or about May 25, 2022, Aetna received approximately $1,378,409 in medical claims for health care services received to the Participant and covered under the Plan in its role as the Fund's claims administrator.

33.     At that time, Aetna did not pay the claims or notify the Fund or HCC of the existence of the $1,378,409 in covered medical claims.

34.     Instead, Aetna "pended" the $1,378,409 in claims, upon information and belief, to determine whether there was other insurance coverage that might apply to the claims.

35.     Upon information and belief, on or about June 25, 2022, Aetna received approximately $398,176 in additional covered medical claims for the Participant.

36.     At that time, Aetna did not pay the additional claims or notify the Fund or HCC of the existence of the $398,176 in additional claims.

37.     Instead, Aetna "pended" the $398,176 in additional claims, upon information and belief, to determine whether there was other insurance coverage that might apply to the claims.

38.     On or about September 13, 2022, Aetna received documentation indicating that there was $10,000 in auto insurance coverage through USAA, which had already been paid toward the Participant's medical claims and exhausted.  Despite this, Aetna did not pay the Participant's claims at that time.

39.     On or about October 8, 2022, the Participant contacted Aetna and explained that the Fund was his primary source of insurance and that the $10,000 in auto insurance coverage through USAA had already been paid toward the Participant's medical claims and exhausted. Despite this, Aetna did not pay the Participant's claims at that time.

40.     In or about October 2022, Aetna received approximately $237,640 in additional covered medical claims for the Participant.

41.     At that time, Aetna did not pay the additional claims or notify the Fund or HCC of the existence of the $237,640 in additional claims.

42.     Upon information and belief, Aetna also "pended" the $237,640 in additional claims.

43.     Upon information and belief, on or about February 7, 2023, Aetna contacted USAA and confirmed that the $10,000 in auto insurance coverage had already been paid toward the Participant's claims and exhausted.  Despite this, Aetna did not pay the Participant's 2022 claims at that time, which totaled approximately $2,014,225.

44.     Aetna was obligated to "process claims for Plan benefits . . . in a manner consistent with the terms of the Plan . . . ."  (Ex. C at 13.)  The Plan, in turn, required Aetna to pay medical claims "within 30 days from when [Aetna] receive[d] all the information necessary."  (Ex. B at 49.)

45.     Aetna had all of the information necessary to pay the Participant's 2022 claims by February 7, 2023, at the latest.

46.     However, Aetna failed to pay the Participant's covered claims for 2022 at that time or within 30 days thereof.

8

47.    Aetna also failed to pay the Participant's covered claims for 2022 before March 31, 2023—the deadline to pay the claims such that HCC would have been required to reimburse the Fund for approximately $1.8 million of the Participant's medical claims pursuant to the Stop Loss Policy.

48.    This is so despite the fact that Aetna had knowledge of the terms of the Stop Loss Policy—including the March 31, 2023 deadline to pay 2022 claims.

49.    In or about June 2023, Aetna withdrew the Fund's plan assets to pay the $1,378,409 in covered claims originally billed on or about May 25, 2022.

50.    Upon information and belief, between February 7, 2023 and its payment of the $1,378,409 in claims in or about June 2023, Aetna had not received any additional material information concerning the Participant's claims, including information related to the $10,000 in auto insurance coverage through USAA.

51.    Aetna did not inform the Fund regarding the amount of Participant's pended claims until it withdrew the Fund's plan assets on or about June 8, 2023 to pay the $1,378,409 in claims originally billed on or about May 25, 2022.

52.    On or about June 12, 2023, after learning that Aetna had paid $1,378,409 in claims for the Participant, the Fund submitted a stop loss claim to HCC seeking reimbursement of the claims paid by Aetna, less the deductible and alternative coverage, related to Participant's medical expenses.

53.    On or about July 21, 2023, Aetna attempted to withdraw additional plan assets, including $373,090 attributable to the Participant's covered claims originally billed on or about

June 25, 2022.  The Fund temporarily prevented this payment in order to coordinate with HCC regarding the pending stop loss reimbursement request.

54.	On or about August 18, 2023, HCC denied the Fund's stop-loss reimbursement request.

55.	On or about September 19, 2023, the Fund appealed HCC's denial of the Fund's stop-loss reimbursement request.

56.	By letter dated September 28, 2023, HCC denied the Fund's appeal, providing, "[T]he Third-Party Administrator, Aetna, failed to pay the claims within the policy period," and "The Fund's agent, Aetna, did not pay these claims under the Contract Basis purchased by the Fund.  These expenses are ineligible and are properly denied."

57.	In or about November 2023, Aetna withdrew the Fund's plan assets to pay the $398,176 in covered claims originally billed on or about June 25, 2022.  While Plaintiff temporarily prevented that payment in light of Aetna's inexcusable failure to pay it prior to the March 31, 2023 stop loss deadline, Aetna threatened to immediately terminate its services to the Fund.  Since this would have been catastrophic to the Fund's ability to provide health coverage to its participants, it assented to the payment without prejudice to its legal rights to later seek to recover the same from Aetna.

58.	In or about December 2023, Aetna withdrew Fund's plan assets to pay the $237,640 in covered claims originally billed in or about October 2022.  Plaintiff did not attempt to stop that payment because of Aetna's prior threat to terminate its services, but reserved its legal rights to later seek to recover the same from Aetna.

59.     The Fund submitted a stop loss claim for Participant's claims after the March 31, 2023 claim deadline for the 2022 calendar year under the stop loss policy.

60.     As a result of Aetna's conduct in connection with the Participant's claims, Plaintiff, or its representatives, were unable to submit a timely notice of claim under the stop loss policy and HCC denied coverage of the Participant's claims under the stop loss policy.

61.     If the Participant's claims had been processed and paid by Aetna on or before March 31, 2023, they would have been covered in full under the stop loss policy and would have been eligible for full reimbursement by HCC (less the deductible).

62.     Because the Participant's claims received by Aetna in 2022 were not processed and paid by Aetna until June, November, and December 2023, they were not covered under the stop loss policy and the Fund lost approximately $1.8 million in plan assets (i.e., $2,014,225 in the Participant's claims less the $215,000 stop-loss deductible) that otherwise would have been reimbursed by HCC.

63.     Aetna's conduct, actions, or inaction have caused harm to Plaintiff in that, as a result, the Fund has fewer plan assets available to pay benefits than it would have had but for such conduct, actions, or inaction.

64.     As a direct and proximate result of Aetna's conduct, actions, or inaction, Plaintiff has incurred the cost of the Participant's claims in the amount of approximately $1.8 million.

65.     Plaintiff is entitled to appropriate equitable relief to remedy Aetna's breach of fiduciary duty, as permitted by law, equity, and the federal statutory provisions set forth herein, including, but not limited to, restitution, surcharge, equitable estoppel, and/or other appropriate remedial relief.

**FIRST CAUSE OF ACTION**

**Breach of Fiduciary Duty**
**Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2)**

66.     Plaintiff restates and realleges the allegations made above in ¶¶ 1-65.

67.     Under Section 502(a)(2) of ERISA, "[a] civil action may be brought . . . by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title . . . ."  29 U.S.C. § 1132(a)(2).

68.     Under Section 409(a) of ERISA, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ."  29 U.S.C. § 1109(a).

69.     Under Section 404(a)(1) of ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]."  29 U.S.C. § 1104(a)(1).

70.     During all periods relevant to this action, Defendant was a "fiduciary" of the Fund within the meaning of Section 3(21) of ERISA, 29 U.S.C. §§ 1002(21), because Defendant had the authority to and did in fact interpret the terms of the Plan, determine benefit claims,

12

and pay benefit claims with the Fund's plan assets.  Thus, Defendant exercised discretionary authority and discretionary control respecting management of the Fund; exercised authority and control respecting management or disposition of the Fund's plan assets; and also had discretionary authority and discretionary responsibility in the administration of the Fund.

71.     Plaintiff reasonably relied upon Defendant to perform its fiduciary duties with respect to the processing and paying of the Participant's claims, including compliance with Section 503 of ERISA, 29 U.S.C. § 1133, and implementing regulations promulgated by the U.S. Department of Labor, 29 CFR § 2560.503-1(f)(2)(iii)(B).

72.     Defendant breached its fiduciary duty to the Fund in at least the following ways:

a.     By failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

b.     By failing to act solely in the interest of and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Fund;

c.     By failing to discharge its duties or otherwise act in accordance with the documents and instruments governing the Fund;

d.     By not making a timely benefit determination with respect to the Participant's claims;

e.     By not providing timely notification to the Participant or the Fund of its benefit determination with respect to the Participant's claims;

13

f.      By not processing and paying the Participant's claims until June 2023 or later;

g.      By mishandling essential Fund functions impliedly and expressly delegated to it;

h.      By failing to exercise appropriate authority or control over the Fund's plan assets;

i.      By mismanaging and/or maladministering the Fund's plan assets; and

j.      By causing the depletion, impairment, and/or disposal of the Fund's plan assets.

73.     As a result of Defendant's breach of fiduciary duty, the Fund was damaged and sustained losses to be determined at trial, and Defendant is liable to make good to the Fund all losses to the Fund resulting from such breach, and to restore to the Fund all profits of Defendant which have been made through use of assets of the Fund by Defendant, and shall be subject to such other equitable or remedial relief as the Court may deem appropriate, including, but not limited to, restitution, surcharge, equitable estoppel, and/or other appropriate remedial relief.

**SECOND CAUSE OF ACTION**

**Breach of Fiduciary Duty and Plan Enforcement**
**Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3)**

74.     Plaintiff restates and realleges the allegations made above in ¶¶ 1-73.

75.     Pursuant to Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), Plaintiff is authorized to enforce the provisions of Title I of ERISA by, among other things, the filing and prosecution of civil claims against those that violate ERISA.

76.     Under Section 409(a) of ERISA, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate . . . ."  29 U.S.C. § 1109(a).

77.     Under Section 404(a)(1) of ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; . . . and (D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]."  29 U.S.C. § 1104(a)(1).

78.     During all periods relevant to this action, Defendant was a "fiduciary" of the Fund within the meaning of Sections 3(21) of ERISA, 29 U.S.C. §§ 1002(21), because Defendant had the authority to and did in fact interpret the terms of the Plan, determine benefit claims, and pay benefit claims with the Fund's plan assets.  Thus, Defendant exercised discretionary authority and discretionary control respecting management of the Fund; exercised authority and control respecting management or disposition of the Fund's assets; and also had discretionary authority and discretionary responsibility in the administration of the Fund.

79.     Plaintiff reasonably relied upon Defendant to perform its fiduciary duties with respect to the processing and paying of the Participant's claims, including compliance with

Section 503 of ERISA, 29 U.S.C. § 1133, and implementing regulations promulgated by the U.S. Department of Labor, 29 CFR § 2560.503-1(f)(2)(iii)(B).

80.    Defendant breached its fiduciary duty to the Fund in at least the following ways:

a.    By failing to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

b.    By failing to act solely in the interest of and for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administering the Fund;

c.    By failing to discharge its duties or otherwise act in accordance with the documents and instruments governing the Fund;

d.    By not making a timely benefit determination with respect to the Participant's claims;

e.    By not providing timely notification to the Participant or the Fund of its benefit determination with respect to the Participant's claims;

f.    By not processing and paying the Participant's claims until June 2023 or later;

g.    By mishandling essential Fund functions expressly delegated to it;

h.    By failing to exercise appropriate authority or control over the Fund's plan assets;

i.    By mismanaging and/or maladministering the Fund's plan assets; and

j.      By causing the depletion, impairment, and/or disposal of the Fund's plan

assets.

81.     As a result of Defendant's breach of fiduciary duty, the Fund was damaged and

sustained losses to be determined at trial, and Defendant is liable to make good to the Fund all

losses to the Fund resulting from such breach, and to restore to the Fund all profits of

Defendant which have been made through use of assets of the Fund by Defendant, and shall be

subject to such other equitable or remedial relief as the Court may deem appropriate,

including, but not limited to, restitution, surcharge, equitable estoppel, and/or other

appropriate remedial relief.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that the Court:

a.      Enter judgment in favor of Plaintiff on the First and Second Causes of

Action for breach of fiduciary duty and enforcement of the Plan under

Sections 502(a)(2) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2),

1132(a)(3);

b.      Order Defendant to make good to the Fund all losses to the Fund

resulting from its breach of fiduciary duty under ERISA, and to restore to

the Fund all profits of Defendant which have been made through use of

assets of the Fund by Defendant;

c.      Order Defendant to provide all equitable or remedial relief arising from

its breach of fiduciary duty under ERISA as the Court may deem

17

appropriate, including, but not limited to, restitution, surcharge, equitable estoppel, and/or other appropriate remedial relief;

d.    Award reasonable attorney's fees and costs of the litigation to Plaintiff under Section 502(g) of ERISA, 29 U.S.C. § 1132(g);

e.    Grant Plaintiff such other and further relief as the Court may deem just and proper.


DATED: July 8, 2024                                    **BLITMAN & KING LLP**

                                                       *s/ Brian J. LaClair*
                                                       Brian J. LaClair (BL3158)
                                                       Franklin Center, Suite 300
                                                       443 North Franklin Street
                                                       Syracuse, New York 13204
                                                       (315) 422-7111
                                                       bjlaclair@bklawyers.com

                                                       Paul K. Brown (PB5193)
                                                       1441 Broadway, Suite 3057
                                                       New York, New York 10018
                                                       (212) 643-2672
                                                       pkbrown@bklawyers.com

                                                       *Attorneys for Plaintiff*